# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| WEDI CORP., )<br>)<br>)<br>    **Plaintiff,** )<br>)     **No. 17-CV-06368**<br>    v. )<br>)     **Judge Jorge L. Alonso**<br>)<br>**SEATTLE GLASS BLOCK** )<br>**WINDOW, INC.** )<br>)<br>)<br>    **Defendant.** ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff wedi Corporation ("wedi"), an Illinois corporation, is suing Seattle Glass Block Window, Inc. ("SGB"), a Washington corporation, for breach of contract (Count I); breach of fiduciary duty (Count II); fraud (Count III); violation of the Illinois Trade Secrets Act, 765 ILCS 1065 (Count IV); and in the alternative, for violation of the Uniform Trade Secrets Act, RCW 19.108 (Count V). Defendant moves to dismiss for lack of personal jurisdiction and improper venue, or in the alternative, for transfer of venue to the United States District Court for the Western District of Washington. For the following reasons, the motion is denied as to personal jurisdiction and granted as to transfer to the Western District of Washington.

## BACKGROUND

Wedi manufactures and distributes waterproof building panels and related products used in the construction and remodeling of showers and other tiled wet rooms. (Compl. ¶ 1.) On May 1, 2008, wedi and SGB entered into an Agency Agreement to appoint SGB as wedi's exclusive agent to solicit orders for wedi products in the states of Alaska, Hawaii, Idaho, Montana, Oregon,

Texas, Washington, and Wyoming. (Compl. ¶¶ 6, 8; Compl. Exs. A & B.) At the time the parties entered into the Agency Agreement, wedi was a Georgia corporation and Georgia was its principal place of business. (Compl. ¶ 1.) SGB is owned and controlled by Brian Wright, a resident of Washington and former employee of wedi. Following Wright's resignation from wedi on September 2, 2014, wedi terminated the Agency Agreement with SGB on September 30, 2014, thereby ending their business relationship. (Compl. ¶ 54.) Wedi alleges that, between 2008 and 2014, during his employment with wedi, Wright harmed wedi by taking actions on behalf of SGB that ran counter to wedi's interests.

According to the Complaint, SGB assisted and disclosed confidential information to a competitor of wedi, Hydroblok International Ltd., ("Hydroblok"), a Canadian corporation, and its subsidiary in the United States, HydroBlok USA, Inc. ("HydroBlok USA"), which is a Washington corporation operated by Wright. Hydroblok is owned and controlled by Ken Koch. Koch distributed products in British Columbia, Yukon, the Northwest Territories of Canada, and the United States Pacific Northwest. (Compl. ¶¶ 18, 19.) Wedi alleges that SGB forwarded confidential information via email to Hydroblok and a Chinese company, Home Elements, Inc. (Compl. ¶¶ 25–52.)

In June 2009, wedi moved its headquarters from Georgia to Illinois. (Compl. ¶ 59.) SGB communicated by phone and email with wedi in Illinois in order to perform its responsibilities under the Agency Agreement. (*Id.*) SGB allegedly emailed and spoke to wedi representatives hundreds of times soliciting instructions, directions, support, and information from wedi in Illinois. (*Id.*) In particular, SGB allegedly wrote to wedi in Illinois in May 2013 requesting information ("confidential product mix") on sales in wedi's western territory, which SGB then provided to wedi's competitors. (Compl. ¶ 75.) SGB also remitted payments to wedi, which wedi

processed in Illinois. (Compl. ¶ 60.) Wedi alleges that while Wright was negotiating his new contract in 2013 with wedi, Wright made representations that he might sell SGB and divest from it. (Compl. ¶ 61.) Wedi alleges that Wright knew he would not sell SGB and divest. (Compl. ¶¶ 61-62.)

Plaintiff alleges that Wright attended a sales meeting in 2012 in Chicago where confidential sales information and distribution charts were displayed and distributed. (Compl. ¶ 68.) According to plaintiff, Wright communicated this information to its competitors. (Compl. ¶ 69.) SGB does not dispute that Wright attended, but it disputes that Wright was in attendance on behalf of SGB. (Def.'s Mot. to Dismiss at 10-11.)

In April 2015, wedi sued Wright, Sound Product Sales, LLC (hereafter "SPS"), and HydroBlok USA (collectively hereafter "Washington defendants") in the Western District of Washington, in a case entitled *wedi Corp. v. Brian Wright, et al.*, 2:15-cv-00671-TSZ, (hereafter "Case 671") for breach of contract (Count I); breach of fiduciary duty (Count II); unjust enrichment (Count III); violation of the Lanham Act, 15 U.S.C. § 1125 (Count IV); civil conspiracy (Count V); violation of the Washington Consumer Protection Act, RCW 19.86.020 (Count VI); and tortious interference with prospective economic advantage (Count VII). (Dekenberger Decl. Ex. 1, ECF No. 21-1 at 11–15.) The Washington defendants moved to compel arbitration in Case 671 in July 2015 based on an arbitration provision in the 2013 Agreement between wedi and Wright. (Pl.'s Opp'n to Def.'s Mot. To Dismiss at 4.) The Western District of Washington granted the motion and arbitration took place in Chicago before the American Arbitration Association ("AAA") (hereafter "Chicago Arbitration"). The Chicago Arbitration took place in March 2017 and the arbitrator delivered the award in June 2017. (Pl.'s Opp'n to Def.'s Mot. To Dismiss at 4.)

In June 2015, wedi filed counterclaims in another case *Hydro-Blok USA LLC, et al. v. wedi GmbH, et al.*, 2:15-cv-00615 (hereafter "Case 615"). (Pl.'s Opp'n to Def.'s Mot. To Dismiss at 4.) As in this case, the claims arose out of Wright's alleged disclosure of confidential information to competitors. Case 671 and Case 615 were consolidated in 2015 in the Western District of Washington, and the consolidated case is presently ongoing. (Pl.'s Opp'n to Def.'s Mot. To Dismiss at 4-5.) SGB was not a party to either Washington case or the Chicago Arbitration.

## ANALYSIS

I. **PERSONAL JURISDICTION**

Personal jurisdiction based on diversity in federal court may be general or specific. General jurisdiction exists where the defendant's contacts with the forum state are "so continuous and systematic as to render [it] essentially at home in the forum." *Daimler AG v. Bauman*, 134 S. Ct. 746, 754 (2014) (internal quotation marks omitted).

SGB is headquartered in Washington, registered as a corporation in Washington, and does business solely in the Pacific Northwest. SGB does not contact the state of Illinois continuously or systematically, nor is its principal place of business in Illinois. SGB is not at home in the state of Illinois, and therefore general jurisdiction does not exist in this case.

Where, as here, no federal statute authorizes nationwide service of process, specific personal jurisdiction exists if the exercise of jurisdiction is authorized by the forum state's long-arm statute and comports with the requirements of the Fourteenth Amendment's Due Process Clause. *Tamburo v. Dworkin*, 601 F.3d 693, 700 (7th Cir. 2010) (citing Fed. R. Civ. P. 4(k)(1)(A)). Illinois's long-arm statute specifically authorizes personal jurisdiction over defendants that are "transact[ing] any business within" Illinois or "perform[ing] any contract or

promise substantially connected with" Illinois, 735 ILCS 5/2-209(a)(1) and (6), but the Court need not interpret that language because Illinois's long-arm statute also permits courts to exercise jurisdiction to the full extent permitted by the Due Process Clause of the Fourteenth Amendment, 735 ILCS 5/2–209(c). Therefore, in this case, "the state statutory and federal constitutional inquiries merge." *Tamburo*, 601 F.3d at 700.

The Due Process Clause of the Fourteenth Amendment limits the power of a court to render a judgment over nonresident defendants. *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291 (1980). To overcome this limitation, the defendant must have had sufficient "minimum contacts . . . such that the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Wash.*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457 (1940)) (internal quotations omitted). While the defendant's physical presence in the forum State is not required, there must be sufficient minimum contacts such that he or she "should reasonably anticipate being haled into court there." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985) (quoting *World-Wide Volkswagen Corp.*, 444 U.S. at 297). Additionally, the defendant's "relationship must arise out of contacts that the defendant *himself* creates with the forum State." *Walden v. Fiore,* 134 S. Ct. 1115, 1122 (2014) (internal quotation marks omitted, emphasis in original); *see also John Crane Inc. v. Shein Law Center, Ltd.*, No. 16-CV-05913, 2017 WL 1105490 (N.D. Ill. Mar. 23, 2017) (defendant's alleged fraudulent activity taking place in Pennsylvania did not permit suit in Illinois merely because defendant knew plaintiff was an Illinois corporation). "[T]he plaintiff cannot be the only link between the defendant and the forum." *Walden*, 134 S. Ct. at 1121.

A defendant has sufficient contacts with the forum state to support the exercise of specific jurisdiction if the following conditions are met: "(1) the defendant must have

purposefully availed himself of the privilege of conducting business in the forum state or purposefully directed his activities at the state; (2) the alleged injury must have arisen from the defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with traditional notions of fair play and substantial justice." *Felland v. Clifton*, 682 F.3d 665, 673 (7th Cir. 2012) (citations omitted).

### A. Whether Defendant's Activities Were Purposefully Directed at Illinois And Plaintiff's Claim Arose Out of Those Activities

When the plaintiff asserts an intentional tort claim, the alleged intentional conduct by the defendant is purposefully directed at the forum state if it is "(1) intentional conduct; (2) expressly aimed at the forum state; (3) with the defendant's knowledge that the effects would be felt—that is, the plaintiff would be injured—in the forum state." *Felland*, 682 F.3d at 674-75 (citing *Tamburo*, 601 F.3d at 703).

It is plain that the first and third elements of this test are met. Plaintiff asserts an intentional tort claim, *see, e.g., Appley v. West*, 929 F.2d 1176, 1180 (7th Cir. 1991) ("Illinois courts have recognized that common law fraud and breach of fiduciary duty are intentional torts."), and of course, in asserting that claim, it has alleged that defendant's conduct was intentional. Further, defendant knew that Illinois has been wedi's home state since 2009, and therefore it must have known that wedi would feel the effects of any intentional tort in Illinois.

That leaves the second element. Plaintiff alleges that defendant expressly aimed intentional conduct at Illinois by sending deceptive phone calls and electronic communications to defendant in Illinois. The Court agrees. This case is similar to *Felland* in that respect. In *Felland*, the plaintiffs, Wisconsin residents, entered into a contract to purchase a condominium unit in Mexico while they were on vacation in Arizona. 682 F.3d at 670. The defendant was an Arizona resident. *Id.* After the plaintiffs returned to their home in Wisconsin, the defendant

6

communicated with them by phone and email, allegedly making fraudulent statements and misrepresentations that the project was properly financed and would be completed on time. *Id.* at 671. The plaintiffs sued in Wisconsin. *Id.* at 672. The Seventh Circuit overturned the Wisconsin district court's dismissal for lack of personal jurisdiction, holding that a view of fraud that only looked at the signing of the contract and not the subsequent communications was too narrow. *Id.* at 675-76. Communications that lulled the plaintiff into a false sense of security and aided in the larger scheme to defraud, the court explained, are relevant to the defendant's minimum contacts with the state. *Id.*

Here, wedi alleges that SGB called and emailed wedi representatives in Illinois to receive confidential information that it intended to pass on to wedi's competitors and to lull wedi into a false sense of security while it colluded with them. As in *Felland*, SGB allegedly repeatedly directed electronic communications at wedi in Illinois in a continuous plan to harm and defraud the company. *See Master Tech Products, Inc. v. Smith*, 181 F. Supp. 2d 910 (N.D. Ill. 2002) (holding that defendant's phone calls made from Texas to an Illinois plaintiff were sufficient to establish personal jurisdiction in Illinois because the calls were made in furtherance of a broader scheme to defraud the plaintiff and lulled the plaintiff into a false sense of security).

According to the allegations of the complaint, not only were Wright's communications to wedi in Illinois at the core of the alleged fraud (Compl. ¶ 59), but Wedi also alleges that Wright and an employee visited Illinois in 2012 in furtherance of their scheme to obtain and distribute confidential information. The 2012 sales meeting and the numerous phone calls and emails between SGB and wedi were not just instances of business transactions, but directly related to the complained-of conduct. *See Café Real Estate LLC v. VSP N. Am. LLC*, 262 F. Supp. 3d 637,

7

640-41 (N.D. Ill. 2017) (defendant's emails and two meetings were to be considered in aggregate as ongoing conduct with the state of Illinois).

This continuing conduct over the course of several years as part of an ongoing business relationship is intentional conduct expressly aimed at the forum state, which supports the exercise of personal jurisdiction. *See Jackson v. N'Genuity Enters., Co.*, No. 14 C 2197, 2014 WL 4269448 (N.D. Ill. Aug. 28, 2014) (defendant's continuing conduct between parties in an existing business relationship showed that the conduct was directed at the plaintiff in Illinois, permitting exercise of jurisdiction there). Wedi adequately alleges that SGB purposefully directed intentional conduct at wedi in Illinois. Additionally, wedi's claim plainly arose at least partially out of those activities; the communications directed at wedi in Illinois are essential to wedi's intentional tort claims because they are the very communications by which SGB conveyed misrepresentations or extracted confidential information to share with wedi's competitors. Wedi's injury arose from SGB's alleged activities directed at wedi in Illinois, which supports the exercise of personal jurisdiction.

## B. Traditional Notions of Fair Play and Substantial Justice

Finally, the Court must consider whether exercising jurisdiction would violate traditional notions of fair play and substantial justice. *Felland*, 682 F.3d at 673. Factors relevant to making this determination are "the burden on the defendant, the forum State's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and the shared interest of the several States in furthering fundamental substantive social policies." *Id.* at 677 (quoting *Burger King*, 471 U.S. at 477 (internal quotation marks omitted)). "[W]here a defendant who purposefully has directed his activities at forum residents seeks to defeat

jurisdiction, he must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Id*. (internal quotation marks omitted). Concerns of unfairness "usually may be accommodated through means short of finding jurisdiction unconstitutional." *Id.*

SGB might be burdened by having to defend in a state other than its home state, but "out-of-state defendants *always* face such a burden." *Felland*, 682 F.3d at 677 (emphasis in original). The Court must balance that burden against plaintiff's interest in seeking redress in Illinois, its home state and most convenient forum, for torts that out-of-state actors inflicted on plaintiff in Illinois. *See Jackson*, 2014 WL 4269448 at *6. Defendant established a continuing relationship with wedi and communicated with its headquarters in Illinois as part of that relationship. This was not a fortuitous interaction. It took place over several years, so defendant was on notice that it might be subject to suit in Illinois. *See Burger King*, 471 U.S. at 487 ("Because [defendant] established a substantial and continuing relationship with [plaintiff's headquarters], received fair notice from the contract documents and the course of dealing that he might be subject to suit in [the forum state], and has failed to demonstrate how jurisdiction in that forum would otherwise be fundamentally unfair, we conclude that the District Court's exercise of jurisdiction . . . did not offend due process.").

Personal jurisdiction in Illinois does not offend traditional notions of fair play and substantial justice in this case. The *Felland* three-prong test is satisfied and specific jurisdiction is proper. Therefore, defendant's motion to dismiss for lack of personal jurisdiction is denied.

## II. TRANSFER OF VENUE

There are two statutes that allow a federal district court to transfer venue to a district court in a different state. Under 28 U.S.C. § 1404(a),[1] a court may transfer a case to another district where venue is proper in both the transferor and transferee districts, while 28 U.S.C. § 1406(a)[2] allows for transfer where venue is proper only in the transferee district.

For a § 1404 transfer of venue to be granted, the moving party must show that (1) venue is proper in the transferor district; (2) venue is proper in the transferee district; (3) the transferee district is more convenient for both the parties and witnesses; and (4) transfer would serve the interest of justice. *Moore v. Motor Coach Indus., Inc.*, 487 F. Supp. 2d 1003, 1006 (N.D. Ill. 2007); *Bryant v. ITT Corp.*, 48 F. Supp. 2d 829, 832 (N.D. Ill. 1999). The analysis under § 1406 is identical, apart from the first element of proper venue in the transferring district. *Van Dusen v. Barrack*, 376 U.S. 612, 634 (1964) ("[T]he transfer provisions of § 1404(a) may be compared with those of § 1406(a)."). The statutory elements of a transfer are weighed "in light of all the circumstances of the case" and their relative weight is left to the discretion of the district court. *Coffey v. Van Dorn Iron Works*, 796 F.2d 217, 219 (7th Cir.1986) (citations omitted).

### A. Proper Venue for District Court

Because the analysis of whether a transfer is proper is essentially the same under either § 1404 or § 1406, regardless of whether venue is proper in the transferor district, the Court sets that issue aside. Both § 1404(a) and § 1406(a) require that the forum to which the case is to be transferred has proper venue. Venue is proper in "a judicial district in which a substantial part of

---

[1] "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented."
[2] "The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought."

the events or omissions giving rise to the claim occurred." 28 U.S.C. § 1391(b)(2); *see Caldera Pharm., Inc. v. Los Alamos Nat. Sec., LLC*, 844 F. Supp. 2d 926, 929 (N.D. Ill. 2012).

The Western District of Washington has general jurisdiction over defendant, as Washington is defendant's home state and primary place of business. The relevant actions of defendant generally took place in Washington. Venue is proper in the state of Washington.

### B. Convenience for Parties and Witnesses

A court must assess the convenience for both parties and the potential witnesses before deciding to transfer a case to a different district court. Courts consider factors such as the "relative ease of access to sources of proof" and the "cost of securing witnesses." *See, e.g., Chi., Rock Island & Pac. R.R. Co. v. Igoe*, 220 F.2d 299, 303 (7th Cir. 1955). In considering the convenience of potential witnesses, the Court must look not to the number of witnesses in a particular location but rather to the quality of the particular witnesses' testimony with respect to the issues in the case. *Vandeveld v. Christoph*, 877 F. Supp. 1160, 1168 (N.D. Ill. 1995). Additionally, plaintiff's choice in forum deserves some deference, *In re Nat'l Presto Indus., Inc.*, 347 F.3d 662, 664 (7th Cir. 2003) (citations omitted), but that deference can be overcome when another forum "has a stronger relationship to the dispute or when the forum of plaintiff's choice has no significant connection to the situs of material events." *Moore*, 487 F. Supp. 2d at 1007; *see Chi., Rock Island & Pac. R.R. Co.*, 220 F.2d at 304.

Defendant is a Washington corporation with all of its operations in the state of Washington. Its owner, Wright, is a resident of Washington as well. The convenience of the defendant weighs in favor of a transfer to Washington.

In the Washington litigation, there are overlapping facts, circumstances, and parties. The witnesses that were at the core of the alleged conduct are located in the Pacific Northwest. For

example, the persons with whom defendant is alleged to have conspired, who will presumably be called as witnesses, are located in Washington or the Pacific Northwest. Defendant's employee, Troy Kendrick, who allegedly attended the 2012 sales meeting where confidential information was shared (Compl. ¶ 65) is based in Washington. Mr. Koch, owner of Hydroblok, is based in western Canada. (Compl. ¶ 18.) Of the key parties and witnesses, only plaintiff is located in Illinois.

Furthermore, plaintiff wedi chose the Western District of Washington in April 2015 when it filed suit in Case 671. Plaintiff's choice in forum to sue related parties on substantially similar facts and claims shows that Washington would not be inconvenient to plaintiff.

Considering all of the parties and witnesses, convenience favors transferring the case to the Western District of Washington where the burden on the key witnesses and defendant will be substantially reduced.

### C. The Interest of Justice

The Court must determine whether it is in the interest of justice to transfer the case to a different district. "Factors traditionally considered in an 'interest of justice' analysis relate to the efficient administration of the court system." *Id*. at 221. It often serves the interests of justice to transfer a case related to other pending litigation to a forum where consolidation is feasible. *See, e.g., Van Dusen*, 376 U.S. at 643-46; *FTC v. MacArthur*, 532 F.2d 1135 (7th Cir. 1976). Additionally, a court's familiarity with state-law claims and the likelihood of receiving a speedier trial are factors that courts should consider in weighing whether a transfer serves the interests of justice. *Coffey*, 796 F.2d at 221.

In determining how to weigh factors related to the efficient administration of the court system, the Court considers whether there is related litigation in the transferee district, the

transferee forum's familiarity with the state law claims, and the likelihood of receiving a speedier trial. *Coffey,* 796 F. 2d at 221. There is related litigation ongoing in the Western District of Washington on similar facts and claims. The Washington court is currently in possession of documents, witnesses, and facts concerning the underlying claims. The Washington litigation began in April 2015 and the parties are engaged in motion practice. The Washington court is familiar with the underlying facts of the case and the parties involved. It is possible that the work to be done in this Court will be duplicative and redundant.

It is true that an Illinois court might have more familiarity with the state law claims that are specific to Illinois. But the other benefits, particularly the convenience of the location and avoiding duplication of work, outweigh the benefit of knowledge of Illinois law.

Further, it is possible that allowing this case to proceed here while related litigation proceeds in Washington would result in inconsistent outcomes, which could confuse and complicate resolving the matters in dispute and awarding damages, if necessary. A transfer of venue could curb the risk of inconsistent judgments. *See Encyclopaedia Britannica, Inc. v. Magellan Navigation, Inc.*, 512 F. Supp. 2d 1169, 1172 (N.D. Ill. 2007); *Countryman v. Stein Roe & Farnham*, 681 F. Supp. 479, 484 (N.D. Ill. 1987). There is "a strong policy in favor of transferring a case to the district where a related action is pending." *Keppen v. Burlington Northern R. Co.*, 749 F. Supp. 181, 184 (N.D. Ill. 1990). The defendant argues this point in its reply brief, stating that plaintiff is hoping for another chance at a different result by taking two bites at the apple. Because Washington defendant Wright is the owner of the instant defendant SGB, it is possible that one court could find Wright liable for tortious activity in one case, but not liable in the other on the same factual allegations. This is especially true if the Washington

court agrees with the findings of the Chicago Arbitration. This would give the plaintiff a chance to re-litigate the same claims in a different court.

Additionally, many of the material events in this case took place in Washington and throughout the Pacific Northwest. The analysis above for convenience of the parties and witnesses is also relevant to the determination of the interest of justice. *Coll. Craft Cos., Ltd. v. Perry*, 889 F. Supp. 1052, 1054 (N.D. Ill. 1995). The convenience to witnesses and parties weighs heavily in favor of transfer.

The relevant factors weigh in favor of transferring venue to the Western District of Washington in the interest of justice.

## **CONCLUSION**

Defendant's motion to dismiss or transfer [19] is granted in part and denied in part. The motion is denied as to dismissal but granted as to transfer. The Court transfers this case to the Western District of Washington.

**SO ORDERED.**

                                        **ENTERED: April 16, 2018**

                                        **HON. JORGE ALONSO**
                                        **United States District Judge**